No. 14,977.

LAW, DOING BUSINESS AS INDEPENDENT INSURANCE
COUNSELORS *v.* SIMON.
(136 P. [2d] 520)

Decided April 5, 1943.

Mr. JOSEPH G. PRENTICE, Mr. CLYDE CAMPBELL, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THE litigating parties appear in the same order as in the district court, and for convenience are herein designated as plaintiff and defendant.

Plaintiff instituted an action to recover on a written contract providing for payment for his services in the sum of $450.00 allegedly rendered to defendant as an insurance expert in setting up an insurance program modifying the program under which defendant was then operating. By answer and cross complaint defendant denied that plaintiff had complied with his contract and alleged that by inducing him to cancel a five thousand dollar Penn Mutual Insurance policy and to purchase other policies of insurance, he had been damaged in the sum of approximately two thousand dollars.

Trial was to the court without a jury. At the close of plaintiff's case defendant moved for a nonsuit. His motion was sustained and plaintiff's complaint dismissed. The court then proceeded with a hearing on the cross complaint. At the close of this hearing the court found for defendant on the cross complaint and assessed damages in his favor in the sum of $661.25, being the amount of the premiums for one year that defendant paid for the new policies of insurance which he procured pursuant to plaintiff's suggested program. At the close of the case, the court stated in his findings, that after hearing all the evidence, while convinced still that the ruling on the motion for nonsuit was correct, without hav-

ing so ruled, the finding on the evidence would be for defendant against plaintiff on his complaint, and for defendant on his cross complaint. The net effect of the court's so finding is that judgment was entered not as on a nonsuit against plaintiff, but on and at the close of all the evidence in the case. Plaintiff prosecutes a writ of error to reverse the judgment dismissing his complaint and to reverse the judgment awarding damages against him on the cross complaint. Defendant, by cross specification of points, seeks a modification of the judgment in his favor because of alleged insufficiency of damages awarded him under uncontroverted evidence.

As we view the several specifications of points of the respective parties, all save two of those presented by plaintiff, which will be noted specifically, in effect raise the question of the sufficiency of the plaintiff's evidence to sustain the cause of action set up in his complaint and of the defendant's evidence to sustain the cause of action set up in his cross complaint and the further question of whether the uncontroverted evidence was sufficient to entitle defendant to a modification of the judgment increasing his award of damages on the cross complaint.

The first point that we note specifically is raised by plaintiff. The trial court allowed defendant to amend his cross complaint on the day of trial. Such matters are within the exercise of a reasonable discretion by the trial court and we find here no abuse of such discretion.

The second point specified by plaintiff as constituting error on the part of the trial court is in ruling adversely to plaintiff on his claim that a certain Mercury automobile upon which defendant levied to satisfy the judgment rendered on defendant's cross complaint, was exempt under section 14, chapter 93, '35 C.S.A., which section exempts from levy and sale, "The tools and implements, or stock in trade, of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, not execeeding two hundred

dollars in value." The court held a full hearing on this matter, saw the witnesses, and found the car not exempt. We have examined the record. There was evidence to support such finding.

In entering the judgments here challenged, we are of the opinion that the court properly evaluated the evidence. This opinion is based, not on a reading of the abstract of the record alone, but upon a consideration of the transcript in its entirety.

Defendant carried life insurance in the amount of about thirty thousand dollars, on some of which he had borrowed against the reserves. Only one policy need be mentioned specifically because that was the only one making up the thirty-thousand-dollar insurance program that was disturbed. This was a five thousand-dollar Penn Mutual policy written on the level premium basis. It was what is commonly known as an ordinary life policy. Defendant had taken out this policy at the age of thirty-two. The annual premium was $125.60; and being a participating policy with dividends applied to a reduction of the premium, the amount required to carry the policy was the annual premium reduced by the annual dividend varying somewhat from year to year, which at the time the matters herein related occurred, was approximately $32.75 per year. The policy had a cash surrender value of $961.00. Defendant was forty-six years of age when plaintiff, styling himself as an insurance counselor, and expert on life insurance, approached him with the project of revamping his insurance program. The record leaves no room for doubt that what plaintiff led defendant to believe he could and would do for him by revamping his insurance program, was to provide defendant's beneficiary at his death with $30,000, eliminate the debts incurred by defendant by borrowing against the reserves on his policies and do this at a less cost than defendant was expending under his program and provide the required $30,000 protection to the beneficiary at a lower cost for the full period of

his life, or until the age of 96, if he should live so long, at which age even an ordinary life policy becomes payable as an endowment policy. For doing this plaintiff was to be compensated in the amount of $450, fixed in a writing signed by defendant during the course of the negotiations.

To accomplish what he promised defendant, and what defendant desired to receive and what he thought he was receiving, plaintiff submitted a series of extensive calculations and a detailed analysis of plaintiff's policies and of certain projected new insurance policies bewildering to a layman, but which when stripped of all frills and furbelows, added up to this: Defendant was to procure the cash reserves on his old policies, either by surrendering them directly or borrowing the full amount of the reserves and allowing them to lapse. Then he was to take out various forms of long-term policies, the term running for the period of his then life expectancy which at ages varying from 65 to 70, must be either converted into ordinary life policies at a very much higher premium rate, or which would automatically reduce, as was the case of one ten thousand-dollar policy, to $4,400 upon the expiration of the term. In any event, at a period in life, from 65 to 70, when a man's earning power may be expected to decrease, defendant would be confronted with a situation which would call either for a reduction of his program much below the point where his beneficiary would receive thirty thousand dollars on his death, or of paying a greatly increased amount over what his present self-constituted program would require. This was not what the plaintiff promised to do for defendant, was not what defendant wanted, thought he was receiving, and not what he agreed to pay for.

The law applicable to such a situation is so elementary that we deem it unnecessary to set it out or to cite authorities supporting it. Plaintiff not having performed the services he agreed to render, is not entitled to recover, and the judgment against him was proper.

Defendant, before becoming aware of the effect of the program upon which he was embarking, had cashed his $5,000 policy in the Penn Mutual Insurance Company and received $961.00. He had also purchased and paid annual premiums aggregating $636.25 for term policies of the character hereinabove described in other companies as suggested by plaintiff, in the amount of $25,000 and had paid plaintiff twenty-five dollars on account of the services to be rendered by him. These policies, so far as the record discloses, were perfectly sound and legal contracts with responsible companies, but they did not, as heretofore pointed out, accomplish the results that plaintiff had promised and to which defendant was entitled under his agreement with plaintiff. When defendant discovered his situation, he went no further in canceling his other insurance policies, advised plaintiff that he had been misled, that he had not received what was promised him, and demanded the money he had paid as premiums on the term policies, but without avail. He attempted, also unsuccessfully, to reinstate his converted Penn Mutual policy. He then purchased, at a higher rate, due to his increased age, a new $5,000 policy in the Penn Mutual, and allowed the term policies to lapse at the end of the policy year.

The court's judgment on defendant's cross complaint for $661.25, being the amount of the premiums paid on the term policies, plus the twenty-five dollars paid for plaintiff's services before discovery that the latter had failed wholly to comply with his contract, was correct. The term policies intrinsically possessed value. They were doubtless worth, to one who desired them, the full amount of the premiums. It well may be that if defendant had died during the year they were in force his beneficiary would have received value for them. Defendant requested plaintiff to procure the money back which he had paid as premiums for them which would have terminated the policies; plaintiff was not able to do so and restore defendant to the position he occupied

before purchasing them. Defendant did not die during the year the policies were in effect and we are not confronted with the problem of determining the relative rights of parties under a situation that did not and cannot occur. If plaintiff had induced defendant, who wanted a cow to supply milk to his children, to pay one hundred dollars to a third party whom he procured and recommended and promised would deliver a cow to him, but who in fact delivered a horse to his pasture, we think that even though the horse had an intrinsic value and was available to defendant while he remained in the pasture to haul his children to a hospital in event of serious illness, that this would be no defense to an action by way of cross complaint to recover from plaintiff the amount he caused defendant to pay, all the time knowing defendant would get a horse that he did not want instead of the cow he did want.

We are of the opinion that the record does not sustain the point raised by defendant: that he is entitled to an increased judgment by reason of canceling the five-thousand-dollar Penn Mutual policy on which the premium was $125.00 a year, less dividends, and purchasing a new, substantially similar five-thousand-dollar policy on which the premium was $200.60 a year, less dividends, to accrue in the future, of the amount of which there is no evidence in the record. Furthermore, as the trial court points out, defendant had received $961.00, practically one-fifth of his orginal policy, so that he is as well off with the $961.00 in his hands in cash and a four-thousand-dollar policy, as he would have been with the original five-thousand-dollar policy. Defendant was still insurable and able to procure, and did procure a new five-thousand-dollar policy of a similar kind in the same company. Without testimony of a competent actuary to fix the relative costs and advantages of the two policies over the period of the defendant's expectancy—and there is no such showing in the record—the damage sustained by going out of the company on one

policy and coming in on another, would be largely speculative. We think the trial court recognized this in substance when he held that under the evidence as it appears in the record the credits that must properly be given against the amount claimed by defendant as damages by virtue of the changing from one policy to another offset each other. There is nothing in the record that shows certainly that a modification as to the amount of damages on the cross complaint is warranted, and if it be assumed that it is warranted, the record does not supply the evidence from which the amount of such modification can be definitely ascertained.

Judgment affirmed.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD concur.