No. 22068.

DOROTHY A. TAYLOR, C. ROBERT TAYLOR, AND THEODORE N. TAYLOR *v.* COLORADO STATE BANK OF DENVER, COLORADO.
(440 P.2d 772)

Decided May 13, 1968.

Robert E. Holland and H. A. Nikkel, for plaintiffs in error.

Winner, Berge, Martin and Camfield, for defendant in error.

*En Banc.*

Mr. Chief Justice Moore delivered the opinion of the Court.

The parties appear here in the same order as they appeared in the trial court, and we shall refer to them respectively as plaintiffs and defendant, or by name. Plaintiffs are here on writ of error to review a judgment of the district court, entered on the defendant's motion at the close of plaintiffs' evidence, dismissing their action against the defendant the Colorado State Bank of Denver.

In the plaintiffs' complaint three groups of defendants were named, and it was alleged that defendants Alfred Gray and Virginia Gray, individually and doing business,

in the sale of used cars, as Spot Motors, fraudulently obtained the sum of $12,315 from plaintiffs' special account in the Colorado State Bank of Denver. Plaintiffs further alleged that defendant Western Surety Company issued surety bonds totalling $8,500 to indemnify any persons against losses suffered by reason of the Grays' and the Spot Motors' fraudulent acts. Alfred Gray confessed judgment on the plaintiffs' claim. Plaintiffs' motion for summary judgment against Virginia Gray, individually and doing business as Spot Motors, and the Western Surety Company was granted by the district court. The Grays, Spot Motors, and Western Surety Company are not parties to the present writ of error.

At the trial to the court, plaintiff Dorothy Taylor testified that she established a special account in the Colorado State Bank in which she deposited the sum of $12,500. She also testified that, pursuant to her agreement with Alfred Gray, the latter could draw upon this account to finance the purchase by him of used cars for Spot Motors. Gray agreed with plaintiffs that his drafts on the account would identify the make, year, and serial number of each vehicle purchased, and that an envelope containing the vehicle's title certificate would accompany each draft. The agreement did not involve the creation of an encumbrance upon the vehicle purchased by Gray to secure the repayment of moneys advanced by plaintiffs. Rather, the defendant bank was to take possession of the title certificate on each vehicle purchased by Gray, which certificate Gray was to deliver with each draft. Plaintiffs and Gray understood that when Gray found a purchaser for one of the used cars he could recover the vehicle's title certificate from the bank by depositing the amount previously withdrawn from the account under the draft for that particular car.

Gray violated the terms of his agreement on three occasions by deliberately misrepresenting on the face of his drafts the type of vehicle actually purchased. Thus his June 13, 1960 draft for $1400 described a 1956

Oldsmobile, but the accompanying envelope contained a Colorado certificate of title to a 1946 Chevrolet. On July 9, 1960, drafts drawn by Gray for $800 and $600 described respectively a 1957 Ford and a 1954 Chevrolet, but the accompanying Colorado title certificates were issued for a 1947 Ford and a 1942 Chevrolet. These and other fraudulent acts not pertinent to the case as related to the bank resulted in depletion of plaintiffs' special account by $12,315.

Plaintiffs sought to establish the defendant bank's liability for breach of an agreement to create and supervise plaintiffs' special account. This agreement, couched in ambiguous terms, appears as Exhibit A:

"May 8, 1959

"Colorado State Bank of Denver
Denver, Colorado
"Gentlemen:
"You are authorized and directed to charge the account of Dorothy A. Taylor, et al. Special with drafts accompanied by supporting papers when such drafts are presented to you with the O.K. of A. M. Gray.
"The papers are to be held by you subject to order of Dorothy A. Taylor.
"This order to continue until cancelled in writing.

"/s/ Dorothy A. Taylor
"/s/ C. Robert Taylor
"/s/ Theodore N. Taylor"

During the presentation of testimony offered by plaintiffs the trial court permitted the introduction of parol evidence to clarify the intention of the parties regarding this instrument. According to the testimony of Dorothy Taylor the phrase "supporting papers" in the parties' contemplation referred to automobile certificates of title. A title would "support the draft if it corresponded to the make, year, and number of the vehicle described on the face of the draft. The president of the defendant bank was called for cross-examination by counsel for plaintiffs. He admitted signing the instrument and

charging plaintiffs' account $1.50 for each of Gray's drafts. He stated that the phrase "supporting papers" referred to therein was meaningless surplusage to the parties' agreement.

The only witnesses called by the plaintiffs were Dorothy Taylor and the bank officer who was cross-examined. When the plaintiffs rested the bank moved for dismissal on two grounds, namely: that there was a failure to establish liability on the part of the bank; and, assuming arguendo that liability had been proven under the evidence, there was no competent evidence establishing the amount of damage to which plaintiffs were entitled.

The trial court dismissed the action against the bank for the sole reason that, "* * * there has been no showing as to the amount of damages which was suffered by the plaintiff[s]." It stated, with reference to the showing made upon the question of liability, that, "So that as far as a prima facie case being proven by the plaintiff[s], I think that has been done." It was the trial court's view that the defendant bank wrongfully neglected to obtain supporting certificates of title on Gray's June 13 and July 9 drafts, and that the measure of plaintiffs' damage was the difference in value between the three vehicles described in Gray's fraudulent drafts and the three vehicles actually purchased by Gray. In the absence of evidence as to the relative value of the vehicles, the trial court granted defendant's motion to dismiss the action. The trial court misconceived the measure of damages applicable to the pertinent facts which were undisputed at the time the motion to dismiss was made.

The fundamental rule to be observed in breach of contract actions is that the wronged party shall recover compensatory damages sufficient to place him in the position he would have occupied had the breach not occurred. See *Law v. Simon,* 110 Colo. 545, 136 P.2d 520; *Fort v. Brighton Ditch Co.,* 79 Colo. 462, 246 P. 786;

Restatement of Contracts, §329. In 25 C.J.S. *Damages* §74, it is stated:

"* * * The measure is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed, * * *."

The court ruled that a prima facie case was established that the bank honored three drafts submitted by Gray in violation of its contractual obligation to honor such drafts only when they were accompanied by supporting papers. As the case stood at the time the plaintiffs rested, the bank was obligated to refuse to honor the three drafts, and had it refused to do so the aggregate sum of $2,800 would not have been withdrawn from plaintiffs' special account.

Defendant misconceives the measure of plaintiffs' damages as the difference in value between the three used vehicles represented by the title certificates and the three vehicles described on Gray's drafts. The record shows that plaintiffs and defendant never obtained any security interest in Gray's vehicles such that in the event of his default the parties could have foreclosed encumbrances against the vehicles by independent *in rem* proceedings. Defendant's mere possession of Gray's title certificates did not suffice to create an encumbrance against the vehicles. C.R.S. 1963, 13-6-19 and 13-6-20; *Codding v. Jackson,* 132 Colo. 320, 287 P.2d 976. Since plaintiffs had no recourse against the used vehicles when Gray's fraud was discovered, their actual damages were not mitigated or reduced by the value of the three vehicles.

The bank's contentions would have merit in the distinguishable situation where a defendant contracts to procure a mortgage or deed of trust against a debtor's property to secure a plaintiff's loan. The defendant's failure to perform, coupled with the debtor's insolvency, would in such a case entitle the plaintiffs to recover damages limited to the value of the security which

the defendant neglected to obtain. *Wages v. Garmon,* 75 Colo. 507, 226 P. 667; *Leven v. Lolcama,* 72 Colo. 427, 211 P. 870; Restatement (Second) of Agency §401, comment e. In the instant case, however, the bank's breach consists of allowing unauthorized withdrawals from the special account, and not of any failure to perfect a security interest in plaintiffs' favor.

In the authorities cited by defendant, *Commercial Savings Bank v. Baum,* 137 Colo. 538, 327 P.2d 743, and *First National Bank v. Jones,* 124 Colo. 451, 237 P.2d 1082, the banks had not entered into contractual agreements defining their duties and responsibilities. The present action, based upon the defendant's claimed express contract, is therefore distinguishable and not controlled by the cited cases.

The judgment is reversed and the cause remanded for further proceedings at which the defendants shall be permitted to introduce any and all evidence pertinent to any issue of liability or damages with reference to the three drafts specifically referred to herein.