ACME DELIVERY SERVICE, INC., Petitioner,

v.

SAMSONITE CORPORATION, Respondent.

No. 82SC75.

Supreme Court of Colorado, En Banc.

May 23, 1983.

Montgomery Little Young Campbell & McGrew, P.C., Richard L. Murray, Jr., Englewood, for petitioner.

Nelson & Harding, John S. Finn, Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review a decision of the court of appeals modifying a judgment in a breach of contract action. *Samsonite Corp. v. Acme Delivery Service, Inc.* (81CA0452, announced December 10, 1981, not selected for official publication). We reverse.

The facts are not in dispute. In February of 1979, Acme Delivery Service, Inc. (carrier or petitioner), received from Samsonite Corporation (shipper or respondent) 715 pieces of luggage to be transported to the warehouse of the consignee, May D & F Company. The luggage was taken instead to a dump, where it was discarded. Of the 715 pieces of luggage, 637 were "lost or destroyed," and the remaining 78 were returned to Samsonite.

The invoice price—the amount to be paid by May D & F to Samsonite—was $15,-364.90. The cost of manufacturing the 637 pieces of luggage was $8,603.23. Samsonite provided replacement luggage to May D & F for the luggage lost or destroyed by Acme.

Samsonite then brought an action for breach of contract against Acme, seeking as damages the invoice price of the luggage together with interest from the date of loss. Acme admitted liability but argued that the correct measure of damages was the cost of manufacturing the luggage.

Both parties filed motions for summary judgment. The trial court granted Acme's motion in the amount of $8,603.23, holding that Samsonite's "full actual loss" was the cost of producing the unsold merchandise. Later it entered an order awarding Samsonite moratory interest at the statutory rate from the date of loss until the date of judgment, as well as post-judgment interest at the statutory rate. Final judgment was entered on April 2, 1981.

On March 31, 1981, prior to final judgment, Acme filed a C.R.C.P. 59(b) motion to amend the judgment to exclude pre-judgment interest. On April 24, prior to a ruling on the motion, Samsonite filed a notice of appeal. On May 19, Acme filed its notice of appeal and contemporaneously moved to withdraw its motion to amend. The motion to withdraw the Rule 59(b) motion was granted on May 26.

The court of appeals determined that the trial court erred in using the cost of manufacture instead of the invoice price as the measure of damages. It also concluded that Acme's notice of appeal was not timely filed and therefore the court could not consider the appeal from the award of pre-judgment interest.

There are three questions before us: (1) whether manufacturer's cost or invoice price is the appropriate measure of damages in this case; (2) whether Acme's notice of appeal was timely filed; and (3) if so, whether the trial court properly awarded moratory interest from the date of loss until the date of judgment.

I.

It is undisputed that the standard for assessing damages is that the carrier is liable for the "full actual loss." *See Sutherland v. Ringsby Truck Lines, Inc.,* 37 Colo. App. 333, 549 P.2d 784 (1976); *Chicago,*

*Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co.,* 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801 (1920); *Polaroid Corp. v. Schuster's Express, Inc.,* 484 F.2d 349 (1st Cir. 1973); *Gore Products, Inc. v. Texas & N.O.R. Co.,* 34 So.2d 418 (La.App.1948); *Meletio Sea Food Co. v. Gordons Transports,* 191 S.W.2d 983 (Mo.App.1946).[1]

Samsonite argues that the fair measure of compensation is the invoice price, because when Samsonite manufactured the 637 suitcases that were lost, it did so with the expectation that it would earn its normal profit on each one. It did earn its normal profit on the replacement group of 637 suitcases, but, viewed as a whole, it earned profit on only 637 of 1,274 pieces of luggage. Therefore, Samsonite argues, it has lost its expected profit on 637 pieces of luggage, and that lost profit should be considered part of the "full actual loss."

Acme, on the other hand, argues that Samsonite would be compensated for its full actual loss by recovery of the cost of manufacture, that is, the replacement cost. If Samsonite is allowed to recover its invoice cost, it would be granted a double profit and would be in a better position than if the loss had never occurred.

The court of appeals held that its opinion in *Sutherland v. Ringsby Truck Lines, Inc., supra,* was dispositive of the damages issue. In *Sutherland,* a shipper sought recovery from a carrier for loss of a shipment of equipment. The equipment had been purchased by the shipper at auction in Utah for $15 and was to be shipped to its place of business in Denver. The replacement cost of the goods in Denver was $22,678.30. Both parties agreed that the standard to be applied was "full actual loss." The trial court held that the shipper was entitled to recover the $15 cost of the goods, as that figure reflected its out-of-pocket loss. The court of appeals reversed, holding that re-

placement cost (less expenses saved) was the proper measure of damages. The court noted that if the contract had been performed, the shipper would have had the equipment available at his place of business in Denver, and that use of a cost figure would deprive the shipper of the benefit of the bargain he struck in Utah.

The reasoning of *Sutherland* is not controlling here. First, the replacement cost was far higher than the original cost. Here, it was stipulated that the replacement cost and the original cost of manufacture were the same. Second, the shipper would have been worse off after the loss of the shipment if he were awarded only $15. There was no way for the shipper to duplicate the bargain he made in Utah, and, consequently, only the replacement cost (as measured by the value of the goods at destination) would compensate for the full actual loss.

Other courts have reached differing results when considering the question of what constitutes "full actual loss." Much of the conflict is more apparent than real, however, as the results are often dictated by the peculiar facts of the cases.

In *Polaroid Corp. v. Schuster's Express, Inc., supra,* the court held that the shipper was entitled to recover its price to its dealer rather than merely its costs of manufacture to compensate for the hijacking of a shipment of photographic equipment. Although questioning the idea that an award of replacement cost would ever adequately compensate for the loss of a shipment, the court held that, in any event, special circumstances of the case militated against an award of only replacement cost. There was strong reason to believe that the hijacked goods would ultimately compete with the manufacturer and that sales would therefore be lost.[2]

---

1. Although the cited cases were decided under the Interstate Commerce Act, 49 U.S.C. § 20(11), the "full actual loss" standard is a reflection of the common law remedy of a wronged party in a breach of contract action, i.e., that he should be put in as good a position as he would have been in had the contract been performed. *See Taylor v. Colorado State Bank,* 165 Colo. 576, 440 P.2d 772 (1968).

2. Samsonite argues that it comes within the rule of *Polaroid,* because there is a possibility that the goods that were "lost or destroyed" will ultimately compete with its sales. However, there is nothing in the record to create the

*Meletio Sea Food Co. v. Gordons Transports, supra,* presented facts similar to those in the case at hand. The carrier was transporting a mixture to be used for breading fish and meats when part of the shipment was contaminated by turpentine and rendered unfit for human consumption. The question was whether the shipper could recover its cost or the invoice price. In rejecting a mechanistic use of the invoice price as the measure of damages, the court stated:

"It is to be noted, however, that the test of market value, whether considered independently or in its relation to a contract price, is at best but a convenient means of determining the extent of the loss; and it may therefore be discarded, and other more accurate means resorted to, if, for special reasons, or under the circumstances of the particular case, it is not exact, or is otherwise inapplicable. As already pointed out, the federal act gives only a right of recovery for actual loss, and in that respect conforms to the basic principle of the law of damages, which contemplates that the remedy provided in a given case shall only afford compensation for whatever injury is actually sustained."

191 S.W.2d at 985. It also said that by awarding the cost price, "the matter stands precisely as though there had been no damage to the original shipment." *Id.* at 986.

On similar facts, the court in *Gore Products, Inc. v. Texas & N.O.R. Co., supra,* reached the opposite result. The carrier broke a container of medicine, which was replaced from inventory by the shipper. The court rejected the carrier's reliance upon *Meletio,* stating that there were no "special circumstances" to warrant use of the cost of manufacture rather than the invoice price as the measure of damages. The court raised the question of what would happen if a second, third, or fourth container had been destroyed, and asked, "Could plaintiff be required to continue to

manufacture goods for the defendant at cost?" 34 So.2d at 422. It is not clear why the court felt compelled to raise hypothetical situations when it had already implied that "special circumstances" might be considered.

Samsonite raises a similar argument, quoting the following passage from a treatise on the subject:

"If the [*Meletio*] decision is accepted in its literal sense, a manufacturer could be forced to operate its plants for months without profit whatever in order to replace at cost goods lost or damaged by a carrier, and conceivably the manufacturer could be forced into bankruptcy while operating its facilities for the benefit of carriers. The law certainly never contemplated a result of this nature and the aforementioned decision is contrary to the general law on this subject."

Miller, *Freight Loss and Damage Claims* 300 (4th ed. 1974).

Little attention need be directed to this argument. It is certainly an argument against a requirement that the cost of goods always be used as the measure of damages, but it is hardly a justification for a rule that cost never be used.[3] It is highly unlikely that the manufacturer would have to operate its plant for months to replace a lost shipment without being able to demonstrate that other sales were lost as a consequence or that the cost of replacement was higher than the original cost of manufacture. If the manufacturer can establish that it was unable to fill orders because its plant had been given over to replacing lost goods, it would have established the loss of profits. Its ability to do so will depend upon the circumstances. A manufacturer whose production capacity is less than or equal to the demand for its product (that is, it can sell all it can make) can easily show the loss of profits. On the other hand, a manufacturer whose production capacity exceeds the demand for its products would not ordinarily be able to establish loss of profits.

---

inference that such competition will in fact occur.

**3.** Because the cost figure in this case was stipulated, it is unnecessary for us to determine how the cost of manufacture should be determined.

The question is not whether a shipper can recover lost profits, for certainly lost profits are part of the shipper's loss. *See Sutherland, supra.* Instead, the question is whether the shipper can recover profits in the absence of a showing that it did in fact lose profits. Samsonite would have us adopt a rule that no such showing is required. We decline to do so.

In a breach of contract action, the burden of proving damages rests upon the wronged party. *John v. United Advertising, Inc.,* 165 Colo. 193, 439 P.2d 53 (1968). Samsonite has not established any damage above and beyond the cost of replacing the goods, but has instead argued that as a matter of law it is not required to.[4]

In many instances, an award of damages based on the invoice price would constitute overcompensation to the shipper, contrary to the rule that a plaintiff in a breach of contract action is not entitled to be placed in a position more favorable than the position he contracted for. *Fleming v. Scott,* 141 Colo. 449, 348 P.2d 701 (1960). The effect of an award of invoice price in this case would be as if May D & F had ordered twice as much luggage from Samsonite as it had, thus increasing Samsonite's total sales and total profits. It is fair to say that most manufacturers desire, and would benefit from, an increase in sales and profits. In such a case, a manufacturer receives more than it "would have had if the contract had been performed...." *Chicago, Milwaukee & St. Paul Ry. v. McCaull-Dinsmore Co.,* 253 U.S. 97, 100, 40 S.Ct. 504, 505, 64 L.Ed. 801 (1920).

In the absence of any evidence showing lost profits, we believe the court of appeals erred in using the invoice price as the measure of damages.

4. Samsonite also argues that it should be allowed to recover invoice price because if May D & F had sued that is the amount it would have recovered. However, the measure of damages recoverable is the loss suffered by the plaintiff and not the loss suffered by someone else. Moreover, under Samsonite's reasoning, May D & F should be permitted to recover retail price, as it expected to profit from every suitcase it ordered.

## II.

We now turn to the question of whether Acme timely filed its notice of appeal on the issue of the propriety of the award of pre-judgment interest.

The court of appeals held that because Acme filed its notice of appeal more than 14 days after Samsonite filed its notice, Acme's appeal was barred under the portion of C.A.R. 4(a) that states, "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within fourteen days of the date on which the first notice of appeal is filed, *or within the time otherwise prescribed by this section (a) ...."* (emphasis added).

The court of appeals did not consider the portion of C.A.R. 4(a) that provides:

"The running of the time for filing a notice of appeal is terminated as to all parties by a timely motion filed in the trial court by any party pursuant to to the Colorado Rules of Civil Procedure hereafter enumerated in this sentence ...."

Among the motions enumerated is a motion under C.R.C.P. 59 to alter or amend the judgment. Such a motion had been filed by Acme prior to the filing of the notice of appeal by Samsonite. At the time that Acme filed its notice of appeal, the motion to amend had not yet been acted upon. Consequently, the period for filing a notice of appeal had not begun to run, and Acme was not barred from filing its notice.

## III.

Finally, Acme argues that the trial court erred in awarding Samsonite interest from the date of loss, because there was no statutory authorization for such damages.[5]

5. Section 5–12–102, C.R.S.1973 (1982 Supp.), has been amended since the loss of the luggage to read as follows:

"(1) Except as provided in section 13–21–101, C.R.S.1973, when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or

Contrary to Acme's contention, however, our case law allows for moratory interest, or interest by way of damages. For example, in *Bankers Trust Co. v. International Trust Co.*, 108 Colo. 15, 113 P.2d 656 (1941), we stated:

"Notwithstanding that in this jurisdiction the decisions are uniform in holding that interest is a creature of statute, and in the absence of contract, is recoverable as such only in such cases as are enumerated in the statute, ... the courts of this state, even when interest is not recoverable under the statute, by distinguishing between interest as such, and interest as damages, many times have allowed the equivalent of interest in the way of damages for the [tortious] taking and detention of money or property."

108 Colo. at 33, 113 P.2d at 665. *See also Davis Cattle Co. v. Great Western Sugar Co.*, 393 F.Supp. 1165 (D.Colo.1975), and cases cited therein.

Here it is apparent that part of the loss suffered by Samsonite was the loss of the use of its money from the date of the loss until the date of judgment. Unless Samsonite is awarded interest as damages for this period, it could hardly be said that it was put in the same position it would have been in had the loss not occurred.

In conclusion, we hold that under the circumstances presented in this case the proper measure of damages is the cost of manufacture (i.e., replacement cost) of the lost or destroyed goods plus interest thereon from the date of the loss.

The judgment of the court of appeals is reversed, and the cause is remanded for reinstatement of the original judgment.

benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be ·at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.