**LANDMARK, INC., Appellant (Defendant and Third-Party Plaintiff),**

v.

**STOCKMEN'S BANK & TRUST COMPANY, (Third-Party Defendant),**

v.

**Arlie RUGER and Debbie Ruger, d/b/a Ruger Mobile Home Park, Appellees (Plaintiffs).**

**No. 83–154.**

Supreme Court of Wyoming.

April 13, 1984.

James L. Edwards of Sheehan, Stevens & Sansonetti, Gillette, for appellant.

James N. Wolfe of Wolfe & Tate, Sheridan, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

Facts which this court is charged with considering in this appeal show that appellees Arlie and Debbie Ruger purchased a parcel of land approximately 15 miles from Gillette, Wyoming for the purpose of building a mobile home park. The Rugers hired appellant, Landmark, Inc., to install a water and sewer system on the property which the appellant did not complete on time and, even after the system was represented to be properly installed, it contained leaks of up to 200 gallons per hour. The appellees were therefore forced to hire labor and materials to repair the water system so that it would function and, at the time of trial, the system was still not working satisfactorily. The evidence is that appellees suffered loss of income and profit, and it is alleged that the appellees' losses are due to the breach of contract by and negligence of the appellant.

The district judge denied various of the appellant's preliminary motions including a motion for summary judgment on the issue of lost income and profits, and the case therefore went to trial, with the jury awarding the appellees damages in the amount of $89,500 for repairs and replace-

ment of the water and sewer system and an additional $40,500 for lost income.

We will affirm.

## ISSUES PRESENTED FOR REVIEW

The issues as defined by the appellant are:

"I. Did the District Court err in denying Appellant's Motion for Summary Judgment on the issue of plaintiffs' claim for lost profits or income?

"II. Did the District Court err in denying appellant's Motion for a Directed Verdict or Motion for Judgment Notwithstanding the Verdict on the issue of plaintiffs' claim for lost profits or income?

"III. Was the evidence before the District Court sufficient to establish an award of $89,500.00 for the repair and replacement of the water and sewer system?"

■ With respect to the resolution of all three of these issues, we will be mindful of the oft-repeated rule which says that, on appeal, this court assumes the evidence of the successful party is true, leaves out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and gives to the evidence of the successful party every favorable inference which may reasonably be drawn from it. *Krist v. Aetna Casualty & Surety*, Wyo., 667 P.2d 665 (1983).

### Issue No. 1
#### The Lost Profits or Income Summary-Judgment Issue

In its motion, the appellant-defendant third-party plaintiff moved for summary judgment

" * * * [a]gainst plaintiff [appellees here] as to plaintiff's claim against defendant for lost income."

According to the movant:

"This motion is based on the pleadings, answers to interrogatories, responses to requests for production of documents, depositions, and any and all items of record at this time, as well as on the attached affidavit as specifically incorporated herein. Such pleadings, filings, affidavits and other materials established that there is no genuine issue as to any material fact as outlined in the case authority under Rule 56 of Wyoming Rules of Civil Procedure and that therefore the defendant and third-party plaintiff Landmark is entitled to judgment as a matter of law as stated in its answer and counterclaim."

The record fails to disclose any depositions, interrogatories or answers to interrogatories. Nor does it contain a demand for the production of documents and there are no documents on file which appear to be responsive to such a demand. There are no exhibits, materials or filings of record which speak to lost income or profits which appear to have been of record when the motion for summary judgment was filed and denied.

The record does contain two affidavits of Stephen F. Hughes, President of Landmark, Inc., appellant-defendant, third-party plaintiff, in support of Landmark, Inc.'s motion for summary judgment. These affidavits address other subjects and do not even mention lost profits. The appellees-plaintiffs filed responsive affidavits which also do not mention lost income or profits. The record contains no other evidence or testimony—deposition-affidavit—response to interrogatory or other form of factual representation—pertaining to lost profits or income which predates the testimony of witnesses elicited at the trial.

Given this state of affairs, we are therefore forced to consider the appellant's contention of error as though the motion for summary judgment is based *only* on the pleadings. In this regard, the appellees' complaint alleges:

"That by virtue of Defendant's breach of contract in its failure to complete the project on time and to conform to the plans and specifications as agreed, the Plaintiffs have suffered damages by reason of the additional expenses, interest and costs for the project, and for lost income in a sum in excess of One Hun-

dred Fifty Thousand Dollars ($150,-000.00),"

in response to which the appellant Landmark, Inc. makes a general denial. No other mention of lost profits or income is contained in the pleadings.

The relevant aspects of Rule 56, W.R. C.P. provide:

"Summary judgment.

\* \* \* \* \* \*

"(b) *For defending party.*—A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) *Motion and proceedings thereon.* —\* \* \* The adverse party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered* forthwith *if the pleadings,* depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" (Emphasis added.)

The ultimate question for our decision on this issue is this:

Can we say, given the nature of the case, that an allegation of loss of profits countered by a pleading denial is sufficient substructure to support a summary judgment for the party entering the denial?

A Rule 56 summary judgment has been described as an appropriate procedural device for the disposition of cases where there exists no question of material fact and only questions of law are involved. *Carter v. Davison,* Wyo., 359 P.2d 990, 994

(1961), quoting from *Pen-Ken Gas & Oil Corporation v. Warfield Natural Gas Co.,* 137 F.2d 871, 877 (6 Cir.1943), cert. denied 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483.

In *Carter v. Davison,* supra, a malicious-prosecution action, it was shown that the defendant in the underlying criminal case had waived his preliminary hearing and was ultimately found not guilty. The defendant in the malicious-prosecution case, who had been the complaining witness in the criminal prosecution, moved for summary judgment on the pleadings on the grounds that he had made out a prima facie case of probable cause in the criminal case according to the law pertaining to such matters. It was the movant's contention that, if he were right in this as a matter of law, it would then be impossible to elicit such facts as would structure a question of material fact and, therefore, summary judgment was appropriate. In this case we held that a motion for summary judgment "may be made wholly on the pleadings," 359 P.2d at 994, citing *Reynolds v. Needle,* 77 U.S.App.D.C. 53, 132 F.2d 161 (1942), and 6 Moore's Federal Practice, 2d ed., p. 2063.

In *Reynolds,* supra, it was apparent upon the face of the pleading that the statute of limitations had run and it was held that summary judgment was therefore appropriate without presentation of supporting evidence.

In Moore's Federal Practice, supra, the author observes that, while a motion for summary judgment may be based solely upon the pleadings, it is then

" \* \* \* functionally equivalent to a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for judgment under Rule 12(c)." [1]

---

1. Rule 12(b)(6), W.R.C.P. provides that the responsive pleading shall contain all defenses to a claim for relief except that certain defenses may be made by motion, including a motion that the pleading fails "to state a claim upon which relief can be granted." Rule 12(c), W.R.C.P. provides:

    "*Motion for judgment on the pleadings.*—After the pleadings are closed but within such time as not to delay the trial, any party may move

    for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

We have followed this concept in Wyoming, when we recently said in *Lafferty v. Nickel,* Wyo., 663 P.2d 168, 169 (1983):

"In this case appellees based their motion for summary judgment on the pleadings without providing any other competent evidence to support the motion. In this posture appellees' motion for summary judgment is equivalent to either a motion to dismiss for failure to state a claim upon which relief can be granted made pursuant to Rule 12(b)(6), W.R. C.P., or a motion for a judgment on the pleadings made pursuant to Rule 12(c), W.R.C.P. *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 (2nd Cir.1968); *United States v. Mills,* 372 F.2d 693, 696 (10th Cir.1966); *Parker v. De Kalb Chrysler Plymouth,* 459 F.Supp. 184, 187 (D.C.Ga.1978), aff'd 673 F.2d 1178 (11th Cir.1982); 6 Moore's Federal Practice, ¶¶ 56.02[3], pp. 56–29, 56.-11[3], p. 56–229. Therefore, for the purpose of this appeal the facts alleged in the complaint are deemed admitted and the allegations contained therein are viewed in a light most favorable to the appellant. *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733, 734 (1979); *State Highway Commission v. Bourne,* Wyo., 425 P.2d 59, 63 (1967)."

Applying this rule to the case at bar, the appellees having alleged that they have

" * * * suffered damages by reason of * * * lost income in a sum in excess of One Hundred and Fifty Thousand Dollars ($150,000.00),"

and the appellant movant having simply denied the allegation, and it being our obligation, for summary-judgment purposes, to treat the facts alleged in the complaint as though they are admitted, we conclude that the appellant has failed to establish that a genuine issue of material fact does not exist[2]—and thus denial of summary judgment must be affirmed insofar as the first issue raised by the appellant is concerned.

2. Under Rule 56, W.R.C.P., the burden of showing the *absence* of a genuine issue of material fact is upon the movant. *Gill v. Schaap,* Wyo., 601 P.2d 545 (1979); *Miller v. Reiman-Wuerth*

## Issue No. 2
### Lost Profits and/or Income

The appellant argues that the trial court erred in failing to direct a verdict on the issue of lost profits. This asks us to decide whether the record contains sufficient evidence to sustain a verdict and judgment on lost income and profits.

The work commenced at the end of November, 1981 and the evidence favorable to the appellees is that the first phase containing 22 spaces would be completed in 90 days and the second phase, which contemplated an additional 20 spaces, would be completed in the spring of 1982. Landmark, Inc. never did complete the job and appellees were forced to hire others to do it.

The appellees claim loss of income and profit from the date Landmark, Inc. agreed to complete the project, to the time when it actually was completed by others. The exhibits and testimony of the appellees' witnesses undertake to substantiate lost income for Phase I in the sum of $35,190 and for Phase II in the amount of $26,400 for a total of $61,590. The lost-income figure found by the jury is $40,500.

We find the evidence sufficient to support this verdict.

At the outset, the rule of *Champion Ventures, Inc. v. Dunn,* Wyo., 593 P.2d 832, 835 (1979), comes to mind, where we said:

"Where there cannot be a fixed amount of damages, triers-of-fact must of necessity be given broad discretion in deciding what award is fair and just. *Chittim v. Armco Steel Corporation,* Wyo., 407 P.2d 1015, 1018 (1965)."

Since damages such as those with which we are here concerned cannot be calculated with certainty, they should nevertheless be ascertained

*Company,* Wyo., 598 P.2d 20 (1979); *Cantonwine v. Fehling,* Wyo., 582 P.2d 592 (1978); *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977); *Seay v. Vialpando,* Wyo., 567 P.2d 285 (1977).

" * * * if there is evidence from which a reasonable estimate of money damages may be made that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited for that purpose." *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280, 1284 (1977).

In *Wyoming Bancorporation v. Bonham*, Wyo., 563 P.2d 1382, 1385, reh. denied 566 P.2d 219 (1979), we held that lost profits will not be denied merely because a business is new, providing sufficient data is available and in evidence and which evidence furnishes a basis for computation of "probable loss of profits." Therefore, we have adopted a "reasonable certainty" test where new business lost-profit proof is in issue. See: *S. Jon Kreedman & Co. v. Meyers Bros. Parking—Western Corporation*, 58 Cal.App.3d 173, 130 Cal.Rptr. 41 (1976); *Vickers v. Wichita State University, Wichita*, 213 Kan. 614, 518 P.2d 512 (1974); and *Smith Development Corporation v. Bilow Enterprises, Inc.*, 112 R.I. 203, 308 A.2d 477 (1973). We reaffirmed the rules of *Wyoming Bancorporation in Albin Elevator Company v. Pavlica*, Wyo., 649 P.2d 187 (1982), when we said:

" * * * However, the rule allowing recovery for lost profits requires that the plaintiff prove such loss with a reasonable degree of certainty through use of the best evidence available." 649 P.2d at 191, citing *Wyoming Bancorporation v. Bonham*, supra; *R.E.B., Inc. v. Ralston Purina Company*, 525 F.2d 749 (10th Cir.1975); and *Lundgren v. Whitney's, Inc.*, 94 Wash.2d 91, 614 P.2d 1272 (1980).

We went on to hold, in *Bancorporation v. Bonham*, supra, that the establishment of lost profits "with reasonable certainty" depends upon the facts of each case. See Notes: *The Requirement of Certainty in the Proof of Lost Profits*, 64 Harvard L.Rev. 317, 319 (1950). The best proof available should be furnished, *Vickers v. Wichita State University, Wichita*, supra; McCormick Law of Damages, § 29 (1935), but absolute certainty with respect to proving loss of future profits is not required. *Smith Development Corporation v. Bilow Enterprises, Inc.*, supra; 22 Am.Jur.2d, Damages § 172.

In this case, what was designated as plaintiffs' Exhibit 62 reads as follows:

"Rutger Mobile Home Park I

| Lot # | Gross Rental | Average Mo. Cost When Rented | Net Rental | 4/1/82– 5/1/83 Months Unoccupied | Lost Income thru 5/1/83 |
|---|---|---|---|---|---|
| 1 | 350.00 | 75.00 | 275.00 | 12 | 3300.00 |
| 2 | 450.00 | 100.00 | 350.00 | 13 | 4550.00 |
| 3 | 450.00 | 100.00 | 350.00 | 11 | 3850.00 |
| 4 | 450.00 | 100.00 | 350.00 | 3 | 1050.00 |
| 5 | 450.00 | 100.00 | 350.00 | 0 | –0– |
| 6 | 150.00 | 30.00 | 120.00 | 6 | 720.00 |
| 7 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 8 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 9 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 10 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 11 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 12 | 150.00 | 30.00 | 120.00 | 9 | 1080.00 |
| 13 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 14 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 15 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 16 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 17 | 150.00 | 30.00 | 120.00 | 6 | 720.00 |
| 18 | 150.00 | 30.00 | 120.00 | 10 | 1200.00 |

"Ruger Mobile Home Park I

| Lot # | Gross Rental | Average Mo. Cost When Rented | Net Rental | 4/1/82– 5/1/83 Months Unoccupied | Lost Income thru 5/1/83 |
|---|---|---|---|---|---|
| 19 | 150.00 | 30.00 | 120.00 | 9 | 1080.00 |
| 20 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 21 | 150.00 | 30.00 | 120.00 | 13 | 1560.00 |
| 22 | 150.00 | 30.00 | 120.00 | 4 | 480.00 |
| | | | | | 35,190.00 |

"Phase II

"20 lots net rental $120.00 per lot
July 12, 1982 thru May, 1983, 11 months to date
$120 × 11 = $1320 loss per lot to date
$1320 × 20 = $26,400 lost income to date 20 spaces"

Plaintiffs' Exhibit 62 portrays net income figures for all of the lots in Phase I. It shows the gross rental and average monthly cost of each lot's utilities with a resulting net figure. In addition, the exhibit shows the months during which each lot was unoccupied with a consequent lost-income figure for each lot, and, finally, a total lost-income figure for all lots in Phases I and II.

In support of this exhibit, various witnesses testified to the proposed rental figures based on experience in the area under the same or reasonably similar circumstances. There was testimony of a probable expectancy that the spaces would have been rented during the time frame in question, had the spaces in fact been available. The cost factors were based upon the experience of the appellee Mrs. Ruger, who testified to seven years in the business in the area.

■ Given this evidence, we find that the Wyoming Bancorporation and Albin Elevator Company rules for proof of loss of profits in a new business have been complied with. The verdict was well within the range of the proof and that is all that is required. *Panhandle Eastern Pipe Line Company v. Smith,* Wyo., 637 P.2d 1020, 1027 (1981).

*Issue No. 3*

Damages for the Repair and Replacement of the Water and Sewer System

The question raised by Issue No. 3 is whether or not the record contains sufficient evidence to sustain the jury's verdict and court's judgment of $89,500 for necessary repairs and replacement of the water and sewer system. Preliminarily, it should be noted that the appellant does not question whether or not there was a breach of the contract by the appellant or that the appellees were damaged thereby.

In *Zitterkopf v. Roussalis,* Wyo., 546 P.2d 436, 438 (1976) we held that the general measure of damages for breach of contract is that amount which will compensate the damaged party for the loss which the full performance of the contract would have prevented or the breach of it has entailed, citing *Woodburn Brothers v. Erickson,* 97 U.S.App.D.C. 227, 230 F.2d 240 (10 Cir.1956); *McBain v. Pratt,* Alas., 514 P.2d 823, 65 A.L.R.3d 621 (1973); *Taylor v. Colorado State Bank of Denver,* 165 Colo. 576, 440 P.2d 772 (1968); *Steel v. Eagle,* 207 Kan. 146, 483 P.2d 1063 (1971); *Prier v. Refrigeration Engineering Company,* 74 Wash.2d 25, 442 P.2d 621 (1968); 25 C.J.S. Damages § 74, p. 843; 22 Am.Jur.2d, Damages § 47, p. 74. To the same effect, see *Reynolds v. Tice,* Wyo., 595 P.2d 1318 (1979).

■ In the case at bar, we conclude that the evidence is sufficient for the jury to find that the water and sewer system in-

stalled by the appellant-defendant had to be repaired and replaced. The appellees-plaintiffs introduced repair billings which totaled $20,775.76. There was testimony of one of the appellees to the effect that additional work would have to be done on a gas line, which repair would total $1,800, and that pumps in the water system would have to be repaired or replaced, the cost of which would be $3,000. There was testimony stating the cost of repairing and redoing the septic system would be $63,900. Testimony was also elicited to the effect that the water system as installed was not of the same quality as that designed and to correct this everything from the curb stop should be replaced. The bid sheet [plaintiffs' Exhibit 61] establishes the cost of the materials necessary to make the repairs from the corporation stop to the curb stop to be: copper pipe, $150; corporation stops, $190; curb stops, $276, exclusive of the cost of PVC pipe between the corporation and curb stops. There was no testimony as to the labor costs involved. The total of these sums is $90,091.76.

We therefore find that there is sufficient evidence to support the jury's verdict and the court's judgment entered thereon.

Affirmed.