**EASTMAN KODAK COMPANY, a New Jersey Corporation, Plaintiff,**

**v.**

**WESTWAY MOTOR FREIGHT, a Colorado Corporation, Defendant.**

**Civ. A. No. 88–K–1765.**

United States District Court, D. Colorado.

March 12, 1991.

Stephen E. Kapnik, Lohf, Shaiman & Ross, Denver, Colo., for Eastman Kodak.

Joseph J. Mellon, Mellon, Harris & Cooksey, Denver, Colo., for Westway Motor Freight.

## ORDER

KANE, Senior District Judge.

Before me is plaintiff's motion *in limine* "to determine the effect of the admission of liability by Defendant Westway Motor Freight, Inc."

In May, 1987, plaintiff, Eastman Kodak, shipped a load of sensitized photographic material from its production facility in Colorado. The load was shipped on a truck operated by Westway Motor Freight, a common carrier. The load was destined for a Kodak regional distribution center in California. When it arrived, most of the load was destroyed.

On the bill of lading, the parties agreed that the temperature in the trailer carrying the goods would not rise above 50 degrees F. When the trailer was opened, the temperature inside was well above the specified temperature.

On January 26, 1990, the parties signed a Pretrial Order. That order contained several stipulations between the parties. On November 27, 1990, this court entered a Memorandum Opinion and Order which contained conclusions of law. I postponed the effective date of that Order, at Westway's request, to allow completion of discovery. Westway has since filed a supplemental brief. This case is set for trial to begin March 14, 1991.

In anticipation of trial, I will address the following issues submitted by the parties:

1. To what extent has Westway confessed liability?
2. Does Kodak's obligation to mitigate damages include reselling the damaged product in its finished form or recycling the product to recover the silver?
3. How should this court measure Kodak's "actual loss"?

■ On the first issue, Westway's response to Kodak's motion *in limine* contradicts several explicit statements in the Pretrial Order. In section three of the January 26, 1990 Order, the parties agreed:

Upon delivery of the Load, the temperature inside the trailer was greatly in excess of 50 degrees F, thus rendering the entire load of photographic material commercially unacceptable.

The language is not qualified by "Kodak claims ..." or "Westway disputes...." The Order goes on to state, "[T]he only remaining issue in this matter is the 'actual loss' suffered by Kodak as a result of the loss of the load." Finally, in part four titled "Stipulations," "Westway has confessed liability in this matter."

The parties will be held to the terms of the Pretrial Order. Pursuant to FRCP 16(e), the "order shall control the subsequent course of the action unless modified by a subsequent order. The order ... shall be modified only to prevent manifest injustice." *See:* Wright, Miller, & Kane, *Federal Practice and Procedure:* Civil 2d, § 1527. Therefore, I hold the entire load of photographic material is commercially unacceptable, and Westway is liable for the loss.

■ The second disputed issue concerns Kodak's obligation to mitigate its damages. In my November Order, I indicated Kodak's recovery will be limited by any "salvage" value to the damaged load. The parties disagree on the meaning of salvage. Westway contends the damaged materials have value in their finished form. Westway believes the goods can be sold and the price discounted for their condition. The "salvage value" is the discounted price the goods, in their damaged condition, could fetch.

Kodak calculates salvage as the value produced by recycling the minerals. Kodak contends it should not be forced market damaged goods as "Kodak" products. According to Kodak, mitigating its damages should not jeopardize its reputation. I agree.

The affidavit of Westway's accounting expert, Gregory Taylor, supports a colorable claim that the damaged Kodak product is saleable, albeit at a discount. As a matter of law, however, I conclude it is unreasonable to force Kodak to sell products the parties agree are commercially unacceptable. I find persuasive the decision in *Sony Magnetic Products of America v. Merivienti O/Y*, 668 F.Supp. 1505 (S.D.Ala.

1987). There, the carrier dropped a load of Sony videocassette tapes. The court rejected the carrier's demand that the tapes be marketed as seconds with a warning label attatched.

> The court is convinced that as a matter of public policy a manufacturer which has spent years and millions of dollars developing a reputation in the marketplace should not be required to jeopardize that reputation under circumstances such as those with which the court is presented in this case.

*Id.* at 1515. Westway must show the damaged goods can be sold without any hint the goods are traceable to Kodak before this court will adopt its concept of salvage. Barring such proof, I conclude salvage means the value of the recycled materials.

 Finally, I re-visit the issue of measuring Kodak's "actual loss." In my November Order, I determined Kodak's damages shall be "market value at the place of destination, minus expenses saved by the loss and salvage, plus interest." (Memorandum Opinion and Order, at 7). My conclusion comports with the "general rule" in damages cases of this sort, and I see no need to repeat the analysis.

In its supplemental response—as it did in its first response—Westway argued this case presents "special circumstances" which warrant abandoning the general rule. Briefly, Westway's position is Kodak was able to replace the damaged load within a short amount of time. Therefore, Kodak should only be allowed to recover its cost of re-manufacturing the damaged product. Otherwise, Kodak will reap a double profit: one for the goods destroyed, and another for the replacement goods sold in place of the damaged goods.

In earlier briefs, Westway argued Kodak must demonstrate some proof of lost sales before it may recover its invoice price which includes its profits. In a recent brief, Westway unearthed the case of, *Acme Delivery Service, Inc. v. Samsonite Corp.,* 663 P.2d 621 (Colo.1983). In *Acme,* the Colorado Supreme court refused to allow a consignor-shipper to recover its lost profits when the carrier destroyed the ship-

ment of goods. The court held, "In the absence of any evidence showing lost profits, we believe the court of appeals erred in using the invoice price as the measure of damages." *Id.* at 625. This decision will not change the outcome here.

*Acme* dealt with goods shipped on consignment. Future profit on those goods was speculative. The *Acme* decision was directed at a different kind of supply and demand relationship than the one in this case. In contrast, the *Acme* decision supports a different conclusion for a different market. "A manufacturer whose production capacity is less than or equal to the demand for its product (that is, it can sell all it can make) can easily show lost profits." *Id.* at 624. Even if Kodak was in the same position as the plaintiff in *Acme,* I am satisfied with Kodak's proof on the profit issue.

I agree with authority, cited by Westway, that the test of market authority is but a "convenient means of getting at the loss suffered." *Illinois Central R. Co. v. Crail,* 281 U.S. 57, 64, 50 S.Ct. 180, 181, 74 L.Ed. 699. If awarding profits will result in a double recovery, the general rule will be abandoned. After the plaintiff demonstrates its loss of product and the profit it would have made on the product, the defendant may respond with its showing of "special circumstances" favoring a different measure of recovery.

 In this case, Kodak demonstrated, to my satisfaction, its sophisticated manufacturing and distribution network designed to cope with losses like the one which occurred in May of 1987. Also, Kodak supported its claim with unrebutted affidavits stating "virtually 100% of all sensitized photographic merchandise produced by Kodak is sold within a short time of finished production," (Vance Affidavit, para. 10.). Westway's proof that most of the lost product was replaced with inventory from other sources does not rebut Kodak's claim it would have sold and earned profit on the goods destroyed. Westway's affidavit challenges Kodak's claim to lost profits on only one type of product: the lithographic plates. There are conflicting

**644**

statements about whether these items were custom made for individual purchasers. If these items were pre-sold and remanufactured without harm to the customer, awarding the cost of remanufacturing the plates may be appropriate. Regarding the other items, Westway fails to meet its burden (as discussed in my November 1990 Opinion) under *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In conclusion, Kodak's motion *in limine* is GRANTED; I conclude no portion of the load is commercially acceptable. I further conclude "salvage" shall be determined as the value of recycled materials in the damaged load. Finally, I will hear, at trial, evidence on the market value, including profit, of the goods destroyed. If Westway wishes to explore the specific circumstances of the production and sale of the lithographic plates, I will hear that too.