## No. 18,234.

COMMERCIAL SAVINGS BANK OF STERLING *v.* TED BAUM, DOING BUSINESS AS TED BAUM COMPANY.

(327 P. [2d] 743)

Decided July 7, 1958.    Rehearing denied July 28, 1958.

Messrs. WOLVINGTON & CARLETON, for plaintiff in error.

Mr. FRANCIS A. BENEDETTI, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error was one of two defendants in the trial court and appears in this court by writ of error to review a judgment against it in the sum of $2,000.00 in favor of Ted Baum, doing business as Ted Baum Company, plaintiff in the trial court. The parties will be referred to herein as plaintiff and defendant, respectively, as they appeared in the trial court, or as Baum, and the Bank. The other defendant in the trial court was Ray Berger, doing business as Berger Sales Company, against whom judgment in the sum of $7,500.00 was entered in favor of Baum by the trial court. He does not appear in this court, and we refer to him as Berger.

It appears that on April 28, 1955, a "verbal deal" was entered into between Baum and Berger concerning the "purchasing and marketing of a quantity of white proso millet," confirmed by a letter of the same date written by Berger to Baum. In this communication Berger agreed to purchase millet at an estimated price and "Then I will make sales of this millet at highest price possible charging 75¢ CWT processing *a* explained and delivery and actual sales expense (no charge for my time) against the profit and total profit will be equally divided between Ted Baum Company and Berger Sales Company. I will keep a record of the transactions and consult you when making sales.

"Financing to be as follows: Check from you for $2000.00 is acknowledged and we are to draw a draft on you the end of this week for $3000.00 attaching to draft a warehouse receipt issued by Platte Valley Elevators for a total of 1250/100# Bags of White Proso Millet suitable for use as seed and per sample submitted to you. We are to substitute and exchange a Lawrence Warehouse Receipt by May 7th for the P V E receipt and then can draw another draft attaching P V E receipt for 1250 bags of white proso millet which IS to be exchanged for Lawrence receipt to be exchanged within a week following. I anticipate this is enough money to make the deal. Will sonsult further if necessary. I expect to make sales right after May 16th and money received from sales will be accounted for in full."

Contemporaneously with the signing of the letter Baum delivered a check to Berger in Gering, Nebraska, payable to Berger Sales Company in the sum of $2,000.00, which represents the basis of the judgment against the Bank. Berger returned to Sterling, Colorado, and deposited the $2,000.00 check to the credit of the Berger Sales Company account carried in Commercial Savings Bank of Sterling, Colorado. On the same day, according to the testimony of plaintiff, Berger showed the letter above quoted to the cashier of defendant Bank; the cashier called plaintiff to ascertain whether or not the check was good so that immediate cash credit could be given Berger. Baum replied that the check was good and Berger was given immediate credit. The following day Berger appeared at the defendant Bank with a sight draft in the sum of $3,000.00 drawn on plaintiff, with a warehouse receipt covering 1250 bags of millet, and a letter of transmittal signed by Berger. The cashier of defendant bank called plaintiff to inquire if the sight draft would be honored so that immediate credit could be given to Berger Sales Company's account. Plaintiff guaranteed the payment of the draft, and Berger was given immediate cash credit therefor. Again on May 5,

1955, Berger appeared in defendant Bank with a sight draft drawn on plaintiff in the sum of $2,500.00 with a warehouse receipt covering 625 bags of millet and letter of transmittal thereto attached. Again the Bank telephoned to Baum to ascertain if the sight draft would be paid upon presentation, and receiving an affirmative answer from Baum a cash credit for $2,500.00 was given the Berger account in defendant Bank. Later a fourth draft for $2,500.00 was presented by Berger for which the Bank gave credit without calling Baum. The fourth draft was dishonored.

On May 13, 1955, Baum came to Sterling, Colorado, and verified his suspicions that the warehouse receipts did not actually represent millet in the Platte Valley Elevator Company, and a short time thereafter the Platte Valley Elevator Company went into bankruptcy. Whereupon the present action was filed.

The trial court reasoned that whatever the relationship between Berger and Baum, whether "it was agency, partnership or whatever it may have been — there was in fact a fiduciary relationship between these parties" and "It should have put the bank upon inquiry. * * * The Bank was in a position to protect itself if there was any question about the advisibility of going ahead and cashing the check." The trial judge then held that the Bank acted at its own peril and "with notice that someone else claimed or might claim an interest in that money, and if there was a loss by reason of that action," the Bank should bear it.

Plaintiff Baum testified as follows:

"Q. * * * Now, there wasn't any understanding or agreement between you and the Commercial Savings Bank that this account or this money which you had paid to Mr. Berger was to be kept in a specific account? A. No specific account. No. Q. In other words, that money was to be run through the general checking account of the Berger Sales Company? A. Yes. Q. Did you ever pay the bank to supervise the withdrawal of

your money? Did you ever pay them any fees? A. No."

It must be borne in mind that Baum had no contract, or other dealings with the Bank. His check was payable directly to Berger Sales Company, and Berger was at liberty to cash the check or deposit it in this or any other bank of his selection. The defendant Bank was in no sense an agent of Baum. When ruling on the motion for a new trial the trial court said: "I feel that Berger intended to and was out to defraud the bank just as much as he was Baum and that he did mislead the bank and defraud the bank."

Counsel for plaintiff state that this case is predicated on C.R.S. '53, 57-1-9, being the section of our Uniform Fiduciary Act relating to "Deposits in personal account of fiduciary." We cannot agree. Conceding, without so deciding, that the relationship between Berger and Baum was that of a fiduciary, we fail to see where 57-1-9 has any application here. Baum knew that Berger was not to keep the funds in a special account and that the $2,000.00 check and the proceeds of the drafts were to be "run through the general checking account of the Berger Sales Company." This was an ordinary business transaction, and under the undisputed evidence in the case, nothing occurred to put the Bank on actual notice that Berger had, or was about to commit a breach of his obligation to Baum. The deposit of the Baum check and the drawing of checks against Berger's account presented no unusual circumstance, and does not amount to evidence that the Bank in receiving the deposit or paying checks drawn by Berger on his account, acted in bad faith.

The burden of proof is on the plaintiff to establish actual knowledge and bad faith. In *Wysowatcky v. Denver-Willys, Inc.*, 131 Colo. 266, 281 P. (2d) 165, this court quoted from *Union Bank & Trust Co. v. Girard*, 307 Pa. St. 488, 161 A. 865, as follows: "As the instrument was good on its face, there was no apparent reason for inquiry; it remained good until shown to have been

taken in 'bad faith' and the burden of proving that was on plaintiff." And again this significant language concerning the purpose of the uniform fiduciaries act: "Uniform and definite rules were found necessary to take the place of diverse and conflicting rules that had grown up concerning constructive notice of breach of fiduciary obligations in order that commerce might proceed with as little hindrance as possible, and, at the same time that loss for breach of such obligation should fall on the party directly responsible for the faithless agent and not on one who was a mere conduit to transmit the fund."

So here the loss for breach of Berger's obligation to purchase the millet in accordance with his contract with Baum should and must fall upon Baum, who is wholly responsible for his faithless agent, and not upon the Bank which was but "a mere conduit to transmit the fund."

The judgment is reversed, and the cause remanded to the trial court with directions to vacate the judgment against the Bank.

Mr. Justice Hall not participating.