**David K. RICHARDS,**
**Plaintiff–Appellee,**

v.

**PLATTE VALLEY BANK,**
**Defendant–Appellant,**

**H. Ray Christman and Attorneys' Title**
**Guaranty Fund, Inc., Defendants.**

**No. 85–2665.**

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1989.

</div>

---

Steven J. Merker of Davis, Graham & Stubbs, Denver, Colo., for plaintiff-appellee.

Andrew J. Friedrich (Edgar L. Neel, with him, on the briefs), Weller, Friedrich, Hickisch, Hazlitt & Ward, Denver, Colo., for defendant-appellant.

Before SEYMOUR, McWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiff Richards brought this action against Platte Valley Bank (Bank) for breach of fiduciary duty. Richards sought to recover $430,000 he had placed in escrow with Centennial Escrow Services, Inc. (Centennial). Marshall, the president of Centennial, placed the funds in Centennial's trust account at Platte Valley Bank and then wire transferred the money to himself rather than Richards. Richards alleged the Bank had notice of the circumstances of Marshall's withdrawal, which would have led a reasonable person to inquire whether Marshall was committing a breach of trust. The jury returned a verdict for Richards. The Bank appeals. For a statement of additional facts, see the companion appeal, *Richards v. Attorneys' Title Guaranty Fund, Inc.*, 866 F.2d 1570 (10th Cir.1989).

The Bank alleges the court improperly instructed the jury on the Bank's liability for breach of a fiduciary duty because it applied a standard of "actual notice" of facts, which would lead the Bank to inquire whether Marshall was committing a breach of trust, rather than "actual knowledge" of the breach of fiduciary duty as required by the Uniform Fiduciaries Act, Colo.Rev.Stat. §§ 15-1-109 and 15-1-111 (1987 Repl. Vol.). We agree the proper standard is actual knowledge and REVERSE and REMAND for dismissal of Richards' claim against the Bank.

I.

This case was removed from the state courts of Colorado to the United States District Court for the District of Colorado based on diversity jurisdiction under 28 U.S.C. § 1332 (1966). In diversity cases, the federal court must apply the law of the forum state, in this case, Colorado. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hopper*, 751 F.2d 329 (10th Cir.1984).

The district court instructed the jury on the Bank's liability stating:

In order for the plaintiff, David K. Richards, to recover from the defendant Platte Valley Bank on his claim that Platte Valley Bank is responsible for the theft of the escrow proceeds by Duane Marshall, you must find all of the following have been proved by a preponderance of the evidence:

(1) The $430,000 fund was held by Centennial Escrow Services, Inc., as fiduciary for plaintiff, David K. Richards;

(2) At the time Platte Valley Bank wire transferred the $430,000 to United

Bank of Denver with instructions that it be paid to Duane Marshall in cash, Platte Valley Bank had *actual notice of facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether Marshall was committing a breach of trust;* and

(3) Such inquiry when pursued with reasonable intelligence and diligence would have given Platte Valley Bank knowledge or reason to know that Marshall was committing a breach of trust.

If you find any of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the defendant on this claim.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict must be for the plaintiff on this claim.

Emphasis added.

This instruction is based upon *Commercial Sav. Bank v. Baum,* 137 Colo. 538, 327 P.2d 743 (1958) and the *Restatement (Second) of Trusts* § 297 comment a (1959).

In *Baum,* the plaintiff sought to recover from the bank funds misappropriated by his agent, Berger. In construing *Baum,* both Richards and the district court assumed the Colorado Supreme Court's decision was not based on the Uniform Fiduciaries Act, relying on the court's statement:

Counsel for plaintiff states that this case is predicated on C.R.S. '53, 57–1–9, being the section of our Uniform Fiduciary Act relating to "Deposits in personal account of fiduciary." We cannot agree.

*Baum,* 327 P.2d at 745. We do not construe this language as rejecting the applicability of the Act. Rather, the Colorado Supreme Court disagreed with the plaintiff's claim that he had proven the bank's liability under the Act. The court then analyzed Baum's claim under the bad faith standard of the Act and concluded Baum had failed to meet his burden of proof.

After reviewing the following quotation from *Baum,* the district court relied on the "actual notice" language in constructing the instruction given to the jury:

This was an ordinary business transaction, and under the undisputed evidence in this case, nothing occurred to put the Bank on *actual notice* that Berger had, or was about to commit a breach of his obligation to Baum. The deposit of the Baum check and the drawing of the checks against Berger's account presented no unusual circumstances, and does not amount to evidence that the Bank in receiving the deposit or paying the checks drawn by Berger on his account acted in bad faith. The burden of proof is on the plaintiff to establish *actual knowledge* and bad faith.

*Id.* at 745 (emphasis added).

■ The court's analysis in *Baum* is consistent with the Uniform Fiduciaries Act as applied in *Wysowatcky v. Denver–Willys, Inc.,* 131 Colo. 266, 281 P.2d 165, 166 (1955). Furthermore, a recent case of the Colorado Court of Appeals cites *Baum* and states the proper standard for establishing breach of fiduciary duty is that the plaintiff must prove either actual knowledge or bad faith. *Kaneco Oil & Gas, Ltd. v. University Nat'l Bank,* 732 P.2d 247, 249 (Colo.App.1986). Therefore, the district court's instruction based on the "actual notice" language attributed to *Baum* rather than "actual knowledge" was error.

The district court's reliance on the *Restatement (Second) of Trusts* § 297 comment a is misplaced. The general rules of law relating to trusts only apply to cases not covered by the Uniform Fiduciaries Act. Colo.Rev.Stat. § 15–1–113 (Repl. Vol. 1987).[1] In light of our conclusion that the Uniform Fiduciaries Act provides the legal standard for determining the Bank's liability in this case, the district court's reliance on the *Restatement (Second) of Trusts* was error.

---

1. Section 15–1–113 states:
   **Cases not provided for in law.** In any case not provided for in this part 1, the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, negotiable instruments, and banking, shall continue to apply.

The Bank asserts its liability, if any, is based on sections 7 and 9 of the Uniform Fiduciaries Act, Colo.Rev.Stat. §§ 15–1–109 and 15–1–111.[2] This assertion is consistent with the reasoning in *Kaneco*, 732 P.2d at 249 (referring to Colo.Rev.Stat. § 15–1–109); *Baum*, 327 P.2d at 745 (referring to Colo.Rev.Stat. § 57–1–9 (1953) recodified as Colo.Rev.Stat. § 15–1–111; and *Wysowatcky*, 281 P.2d at 166 (referring to Colo.Stat.Ann. Ch. 67, § 5 (1935), recodified as Colo.Rev.Stat. § 15–1–107 (1987 Repl. Vol.)). Any instruction based on § 15–1–109 or § 15–1–111 would allow the plaintiff to recover for breach of fiduciary duty upon showing either the bank acted "with actual knowledge that the fiduciary is committing a breach of his obligation as a fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith." *See Kaneco*, 732 P.2d at 249. Actual knowledge or bad faith are separate bases for recovery. *Maryland Casualty Co. v. Bank of Charlotte*, 340 F.2d 550, 553–55 (4th Cir.1965). The district court's instruction should have allowed the jury to determine the Bank's liability, if any, on the basis of either actual knowledge or bad faith.

Richards argues §§ 15–1–109 and 15–1–111 are not applicable because Marshall received the $430,000 by a wire transfer rather than by a check. Richards relies on *Colby v. Riggs Nat'l Bank*, 92 F.2d 183, 198 (D.C.Cir.1937), and *Stern v. Lucy Webb Hayes Nat'l Training School*, 381 F.Supp. 1003, 1017 (D.D.C.1974). In *Colby*, three fiduciaries drew a trust check payable to one of the fiduciaries personally. When the check was deposited in the personal account of the trustee, it had the effect of paying a then existing overdraft in the account. The court refused to apply section 6 of the Act to protect the bank from liability, because payment of the overdraft did not come strictly within the letter and spirit of the Act. The court stated "the [A]ct is not concerned with bookkeeping transactions. In this view, not only was the payment of the overdraft outside of the language of section 6 but also outside its purpose and intent." 92 F.2d at 198.

In *Stern*, a hospital and the financial institutions with which it dealt allegedly breached their fiduciary duty in mismanaging the hospital's assets. The financial institutions sought to apply the standards of the Uniform Fiduciaries Act to their liability for the excessive deposits the institutions held for the hospital. The court, relying on *Colby*, refused to apply the Act, stating:

> That Act, however, applies only to liability for "check transaction[s]," and the personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks on that account, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary by that action; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with *actual knowledge* that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith. (Emphasis added.)

---

2. Colo.Rev.Stat. § 15–1–109 states:

**Deposit in name of fiduciary.** If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with *actual knowledge* that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check. (Emphasis added.)

Colo.Rev.Stat. § 15–1–111 states:

**Deposits in personal account of fiduciary.** If a fiduciary makes a deposit in a bank to his

common law prevails in all areas where the Act does not expressly apply. *Colby v. Riggs Nat. Bank,* 67 App.D.C. 259, 92 F.2d 183 (1937). The maintenance of excessive deposits does not appear to fall within any of the Act's provisions, so the principals set forth above are controlling. 381 F.Supp. at 1017.

Neither case discusses the applicability of the Uniform Fiduciaries Act to wire transfers. The *Colby* case involved use of fiduciary funds to pay an overdraft, and the *Stern* case involved excessive deposits. We do not find these two cases persuasive to exclude wire transfers from the application of the Act. The court's decision in *Colby* has been criticized.[3] Two of the five justices on the panel dissented, stating the refusal to apply the Act to the bookkeeping transaction which reduced the account overdraft "gives too fine a literalness to the language of the Act." 92 F.2d at 201. The case's limitation of the Act to "check transactions" has only been cited with approval in *Stern.* On the other hand, in *Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823 (5th Cir.1959), *cert. denied,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960), the court rejected the limiting language of *Colby* and found the Act applicable to a debit memorandum. *Id.* at 833–34. *See also Norristown–Penn Trust Co. v. Middleton,* 300 Pa. 522, 150 A. 885 (1930), in which the court refused to limit application of the Uniform Fiduciaries Act only to checks and applied the Act to a bank draft.

■ We believe wire transfers are analogous to checks for application of the Uniform Fiduciaries Act. The transfer of funds by cable or telegraph is in law a check. *Lourie v. Chase Nat'l Bank,* 42 N.Y.S.2d 205, 206 (Sup.Ct.1943). *See also Delbrueck & Co. v. Manufacturers Hanover Trust Co.,* 609 F.2d 1047, 1051 (2d Cir.1979) (wire transfers have been treated as analogous to checks in determining whether a transfer is irrevocable). *But see*

*State of Colorado ex rel. St. Banking Bd. v. First Nat'l Bank,* 394 F.Supp. 979, 985 (D.Colo.1975), *aff'd in part and rev'd in part,* 540 F.2d 497 (10th Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977) (electronic fund transfer is comparable to the wire transfer of funds and is not considered payment of a check for determination of applicability of branch banking laws).

The undisputed testimony in this case defined wire transfers as:

> [A] nonpaper transmittal of funds from one point to another as—just as if [a customer had] written a check. [The customer] would call into the bank or leave instructions with the bank to send funds; .... [The bank] would take funds out of [the customer's] account and transmit it to the institution where [the customer] wanted it—the funds to be deposited.

The Federal Reserve System's regulations for wire transfers of funds are contained at 12 C.F.R. §§ 210.25–210.38 (1988). In a wire transfer the transferor bank sends a transfer item to its Reserve Bank which debits the transferor's account and credits the transferee bank's account. 12 C.F.R. § 210.29. The Reserve Bank then sends the transfer item to the transferee bank which makes the amount available to the beneficiary. 12 C.F.R. § 210.30. The transfer item must be in some form of writing, such as letter, telegram or magnetic disc. 12 C.F.R. § 210.28. Wire transfers are considered irrevocable after transmission. *Delbrueck,* 609 F.2d at 1051.

These wire transfer requirements are similar to the definition of a check under the Uniform Commercial Code. A check is defined as a draft drawn upon a bank and payable on demand, signed by the maker or drawer, containing an unconditional promise to pay a sum certain in money to the order of the payee. Colo.Rev.Stat.

---

**3.** Several law review comments question the decision in *Colby. See, Comment,* 51 Harv.L. Rev. 563 (1938), "To make the application of the Act to the innocent transferee, whom it seeks to protect, depend upon the banking procedure employed by the defalcating trustee seems un-
necessarily formalistic." *Id.* at 564. *Comment,* 34 Ill.L.Rev. 819, 826–28 (1940). "Any distinction between an overdraft and other debts is tenuous." *Id.* at 827. 37 Mich.L.Rev. 160 (1938); 86 U.Pa.L.Rev. 322 (1937–38).

§ 4–3–104(2)(b) (1973). A wire transfer is a written order to pay, drawn upon a bank containing an unconditional promise to pay a sum certain in money to the order of the beneficiary. The only element missing is the maker's signature. We do not consider this element significant for purposes of excluding wire transfers from the operation of the Uniform Fiduciaries Act.

*Union Bank & Trust Co. v. Girard Trust Co.*, 307 Pa. 488, 161 A. 865 (1932), discusses the reasons for the adoption of the Uniform Fiduciaries Act:

> The great volume of the commercial transactions of the country requires the use of checks, drafts, and *similar instruments;* a large part of them must be drawn or negotiated by fiduciaries or agents; they must pass through banks all over the country. Uniform and definite rules were found necessary to take the place of diverse and conflicting rules that had grown up concerning constructive notice of breach of fiduciary obligations in order that commerce might proceed with as little hindrance as possible, and, at the same time, that loss for breach of such obligation should fall on the party directly responsible for the faithless agent and not on one who was a mere conduit to transmit the fund; this necessity led to the enactment of the Uniform Fiduciaries Act.

*Id.* 161 A. at 870 (emphasis added) (cited with approval in *Wysowatcky*, 281 P.2d at 167).

Hundreds of thousands of wire transfers occur every day. The sender of money on a wire transfer tells its bank to send instructions to the Federal Reserve System or to a corresponding bank to make money or credit available through still another bank. *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir.1988). The frequent use of wire transfers and the similarity to checks

qualifies these transactions for treatment under the Uniform Fiduciaries Act.

The Bank asserts that if the Uniform Fiduciaries Act is not the controlling standard for determining its liability, the district court improperly instructed the jury on the common law standard of liability. Because we have determined the Act is applicable, we do not address this argument on the common law standard.

## II.

The Bank asserts, in the alternative, that the district court should have based its liability instruction on the good faith standard of the Uniform Fiduciaries Act, Colo. Rev.Stat. § 15–1–105 (1987 Repl. Vol.). Section 15–1–105 states:

> **Application of payments to fiduciary.** A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

The district court refused two of the Bank's tendered instructions based on § 15–1–105.[4]

■ In order for the Bank to prevail under § 15–1–105 it must show it transferred the $430,000 to Marshall in good faith *and* that Marshall was authorized to receive these funds. *See Kaneco*, 732 P.2d at 249; *Cliborn Drilling Co. v. Wyoming Mineral Corp.*, 42 Colo.App. 41, 589 P.2d 78, 80 (1978). The evidence is in dispute whether Marshall was authorized to receive the wire transfer. The Bank's tendered instructions do not discuss the authorization element. We find no error in the district court's refusal of these two instructions.

**4.** Refused instruction No. 3 states:

Unless you find that plaintiff has shown that defendant Platte Valley Bank did not act in good faith in making the wire transfer of the subject funds, your verdict must be for defendant Platte Valley Bank.

Refused instruction No. 4 states:

If you find that defendant Platte Valley Bank acted in good faith in making the wire transfer of the subject funds, your verdict must be for Platte Valley Bank.

### III.

The Bank asserts the district court erred in denying its motion for directed verdict because the district court applied the wrong legal standard of "actual notice" rather than "actual knowledge." The Bank claims it was entitled to a directed verdict under the proper standard because Richards failed to prove the Bank acted either with bad faith or actual knowledge of Marshall's breach of fiduciary duty. The Bank urges us to remand this case and direct the district court to dismiss the action against the Bank. We agree.

The propriety of granting or denying a motion for a directed verdict is tested both in the trial court and on appeal by the same rule. The appellate court must view the evidence and all inferences most favorably to the party against whom the motion is made, and determine whether the evidence is sufficient to create an issue for the jury. *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir.1967). The trial court may direct a verdict only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion. *Taylor v. Gilmartin*, 686 F.2d 1346, 1353–54 (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *accord Guilfoyle v. Missouri, Kansas, & Texas R. Co.*, 812 F.2d 1290, 1292 (10th Cir.1987).

█ A proper motion for a directed verdict and its denial will always preserve for review the question whether under the law truly applicable to the case there was an adequate evidentiary basis for submission of the case to the jury. *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1518 (10th Cir.1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). The Bank moved for directed verdict on two occasions urging the district court to adopt the "actual knowledge" standard of liability. This preserved the Bank's opportunity to challenge the sufficiency of the evidence on that issue under the truly controlling law. Therefore we will review Richards' evidence to determine whether there was a jury issue under the theories of bad faith or actual knowledge.

We have been unable to find any Colorado cases defining "bad faith" as it is used in the Uniform Fiduciaries Act. The Colorado courts have used the bad faith standard to analyze the facts of various cases but have not articulated the elements of that standard. *See Kaneco*, 732 P.2d at 249 (plaintiff did not meet burden of showing bad faith on part of the bank); *Baum*, 327 P.2d at 745 (deposit of check presented no unusual circumstances amounting to evidence of bad faith); *Wysowatcky*, 281 P.2d at 166 (no element of bad faith being involved, plaintiff had the burden of showing actual knowledge). Our task is to predict how the Colorado Supreme Court would define "bad faith" in applying the provisions of the Uniform Fiduciaries Act. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984).

The Uniform Fiduciaries Act does not define "bad faith," but it does define "good faith" as a thing done "honestly, whether it be done negligently or not." Uniform Fiduciaries Act § 1(2), 7A U.L.A. 396 (1985). Most jurisdictions that adopted the Act construe "bad faith" as dishonesty, reasoning that it is the opposite of "good faith." *See e.g., Colby*, 92 F.2d 183. However, when the Colorado Legislature adopted the Act, it excluded the subsection defining good faith. 1923 Colo.Sess.Laws 173–78. We have been unable to ascertain the legislature's intent in omitting this subsection.

Because Colorado's version of the Uniform Fiduciaries Act does not define either good or bad faith, the Act provides that we may look to other commercial laws for a definition. *See* Colo.Rev.Stat. § 15–1–113.[5] The Uniform Commercial Code defines "good faith" as honesty in fact in the conduct or transaction concerned. Colo.Rev. Stat. § 4–1–201(19) (1973). Good faith is determined under a subjective standard without considering the party's negligence. *Money Mart Check Cashing Center, Inc. v. Epicycle Corp.*, 667 P.2d 1372, 1373 (Colo.1983); *accord Peregrine Homes, Inc. v. Jefferson Bank & Trust*, 713 P.2d 1342,

---

**5.** *See supra* note 1.

1343 (Colo.App.1985). The term "bad faith" requires showing some indicia of dishonest conduct. The mere failure to make inquiry, even though there are suspicious circumstances, does not constitute bad faith, *Union Bank & Trust*, 161 A. at 869, unless the facts and circumstances are so cogent and obvious that to remain passive would amount to deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction. *Edwards v. Northwestern Bank*, 39 N.C.App. 261, 250 S.E.2d 651, 657 (1979) (quoting *Davis v. Pennsylvania Co.*, 337 Pa. 456, 460, 12 A.2d 66, 69 (1940)).

■ Viewing the evidence in a light most favorable to Richards, prior to wire transferring the money the Bank knew the following facts. Centennial's trust account into which the check was deposited usually held funds belonging to other persons. The face of the check which was deposited indicated it was being paid to Centennial "pursuant to the terms of the escrow agreement."

Marshall told the Vice President of the Bank that the funds were from the sale of a Vail condominium by Mexican nationals; however, the check deposit slip refers to "'7-11's" not condominiums. Also the check refers to Snyder, which is not a Hispanic name. The Vice President also knew Marshall and his wife separated in May 1982; that Marshall left his job in October 1982; and that Marshall's outstanding personal loan of $15,000 was still unreduced from 1979. After depositing the check, Marshall demanded the full $430,000 in cash. Marshall stated the Mexican nationals who sold the condominium wanted cash so that they could convert the proceeds to pesos at a higher illegal exchange rate; but Marshall did not have the money transferred to these individuals but rather to himself. Marshall had never made a cash demand higher than $100,000. A demand for cash of $430,000 is unusual. The Vice President called Intrawest Bank of Denver, the maker of the check, to determine if there were sufficient funds to pay the check, but he did not inquire who Snyder was or what were the terms of the escrow agreement.

Considering the evidence presented by Richards in a light most favorable to him, we find it insufficient to create an issue of bad faith for the jury. We found no evidence that the Bank acted dishonestly. While the circumstances of this wire transfer are such that the bank's failure to inquire further could constitute negligence and may be suspicious, they were not so cogent or obvious that the Bank's failure to inquire about the terms of the escrow agreement amounts to a deliberate evasion of knowledge because the Bank feared the transaction was defective.

The purpose of the Uniform Fiduciaries Act was aptly stated in *Union Bank & Trust:*

> Uniform and definite rules were found necessary to take the place of diverse and conflicting rules that had grown up concerning constructive notice of breach of fiduciary obligations in order that commerce might proceed with as little hindrance as possible.

*Id.*, 161 A. at 870 (cited with approval in *Wysowatcky*, 281 P.2d at 167). To require the Bank to inquire of the circumstances of every trust transaction where "suspicious circumstances" exist would bring the wheels of commerce to a halt. Banks would be reluctant to allow trust accounts. The purposes of the Uniform Fiduciaries Act, both nationally and as adopted by Colorado, would be thwarted. Liability for failure to inquire will only be imposed where the Bank has engaged in deliberate evasion of the knowledge of a defective fiduciary transaction.

■ We have also found no evidence that the Bank had actual knowledge that Marshall was going to misappropriate the funds. The district court erred in failing to direct a verdict for the Bank at the close of Richards' case. The district court's judgment is REVERSED and REMANDED for entry of judgment dismissing Richards' claims against the Bank.